UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**TAYR KILAAB AL GHASHIYAH a/k/a
JOHN ALBERT CASTEEL, MARQUES
CHILDS, HENRY E. SMITH, and
JASON KRYSHESKI,**
        **Plaintiffs,**

      v.                                           Case No. 03C839

**WISCONSIN PAROLE COMMISSION,
SMITH[1], PATRICIA GARRO, CAPTAIN
BRUCE MURASKI, and J.P. GRAHL,**
        **Defendants.**

## DECISION AND ORDER

Plaintiffs, Wisconsin prison inmates at all times relevant, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and were granted leave to proceed in forma pauperis. Defendants have filed a second motion for summary judgment, and plaintiffs have filed a second cross-motion for summary judgment. In addition, plaintiffs have filed motions to compel, for court order, for declaratory judgment, and to expedite the ruling and decision in this case. In this decision, I focus on the motions for summary judgment.

### I. BACKGROUND

Following a screening of the complaint pursuant to 28 U.S.C. § 1915A, plaintiff Ghashiyah was permitted to proceed on retaliation, access to the courts, due process, and equal protection claims. All plaintiffs were allowed to proceed on a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq.

---

[1] There are three defendant Smiths appearing in this case: J. C. Smith, J. D. Smith, and Warden Judy P. Smith. However, J. D. Smith is the only Smith still involved in the case. Thus, J. C. Smith and Warden Judy P. Smith will be dismissed.

On March 30, 2005, the court denied plaintiffs' motion for summary judgment, and granted in part and denied in part defendants' motion for summary judgment. As a result, plaintiffs' Claims 1-21 and 23-26 were dismissed. Claims 22 and 27 remain.

Claim 22 is plaintiff Tayr Kilaab al Ghashiyah's access to the courts claim.[2] Ghashiyah alleges that he was placed in temporary lock-up (TLU) due to a false conduct report he received on July 20, 1994. He also alleges that defendants "Smith, Muraski, Garro, and Grahl used the TLU placement and the false allegations to confiscate plaintiff's legal material," resulting in the dismissal of three cases that plaintiff had pending in the Wisconsin Court of Appeals. (Compl. at 9, ¶ 33.)

Claim 27 is brought under the ADA and involves all plaintiffs. Plaintiffs assert that they have a history of drug and alcohol addiction and that prison officials refused to consider them for the benefits of work release programs, furloughs, and other programs because of their disabilities. Plaintiffs also allege that the Wisconsin Parole Commission follows an unwritten policy of automatically denying parole to incarcerated persons, including plaintiffs, with substance abuse history. (Compl. at 34-37, ¶¶ 259-96.)

Plaintiffs Ghashiyah, Marquis Childs, Henry E. Smith, and Jason Krysheski were incarcerated in the Wisconsin Prison System in the custody of the Wisconsin Department of Corrections (DOC) at all times relevant to this action. Defendant Wisconsin Parole Commission (WPC) is an agency in the executive branch of the State of Wisconsin, Wis. Stat. § 15.145. The individual defendants are all DOC employees. They are Bruce Muraski, John P. Grahl, Patricia L. Garro, and J. D. Smith.

---

[2] Ghashiyah is also known as John Albert Casteel.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id.  For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 323.  Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy his initial burden simply by pointing out the absence of evidence.  Id. at 325.  Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial.  Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).  In considering a motion for summary judgment, the court may consider any materials that would be admissible or usable at trial, including properly authenticated and admissible documents.  Woods v. City of Chi., 234 F.3d 979, 988 (7th Cir. 2000).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record — only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). In addition, a summary judgment motion cannot be disputed with hearsay statements, Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997), or with "conclusory allegations and self-serving documents, without support in the record," Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) (citing Patterson v. Chi. Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998)).

The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. See 10A Charles Alan Wright, et al., Federal Practice and Procedure, § 2720 at 327-28 (3d ed. 1998). I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957)

### III. ACCESS TO COURTS CLAIM

**A. Relevant Facts**

In June or July of 1994,[3] plaintiff Ghashiyah was issued Adult Conduct Report (CR) 616853-1134 (hereinafter the "conduct report") for disobeying orders, disrespect, disruptive

---

[3] The parties dispute whether the underlying conduct report was issued on June 20, 1994, or July 20, 1994.

conduct, and failure to follow institution policies and procedures. Pursuant to this report, defendant Grahl placed Ghashiysh in TLU, and defendant Muraski approved this placement. The conduct report was later dismissed.

Ghashiyah claims that his legal materials were confiscated while he was in TLU, leading to the dismissal of his then-pending legal actions. He states that a property department employee told him that Muraski had ordered property department personnel to forward his legal materials to the security office, and that the materials would be returned to him only after defendants Smith, Garro, Muraski, and Grahl finished reviewing them. Gashiyah further contends that Grahl knew that Ghashiyah was innocent of the charges in the conduct report.[4]

Defendants contend that they did not destroy Ghashiyah's legal property, that they did not order or encourage anyone else to destroy his property, and that they did not control the operations of the property department. Further, they dispute that Grahl knew that Ghashiyah was innocent. Ghashiyah states that defendants' affidavits contain perjured testimony.

**B.    Discussion**

Prisoners have a due process right of access to the courts and must be given a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977). Such access must be effective and meaningful. Id. at 822. To succeed on a

---

[4]Ghashiyah states that Grahl also failed to follow administrative procedure in recording Ghashiyah's version of the facts and that defendant Smith failed to follow administrative procedure in reviewing Ghashiyah's administrative complaint. However, any compliance or lack thereof with § DOC 303.11 is irrelevant to Ghashiyah's access to the courts claim.

5

claim of denial of access to the courts, a plaintiff must show that any alleged interference caused actual injury and hindered efforts to pursue a legal claim respecting a basic constitutional right. Lewis v. Casey, 518 U.S. 343, 351 (1996).

The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an absolute deprivation of access to all legal materials." Id. at 353 n.4. Failure to identify some detriment that is linked to an adverse decision in, or inability to litigate, a case "is fatal . . . under any standard of sufficiency." Martin v. Davies, 917 F.2d 336, 340 (7th Cir. 1990) (giving as examples of prejudice "court dates missed" and "inability to make timely filings"). Alone, delay and inconvenience do not rise to a constitutional deficiency. Campbell v. Miller, 787 F.2d 217, 229 (7th Cir. 1986).

As an initial matter, defendant J.D. Smith has not been served. However, I will not dismiss defendant Smith for that reason in light of the fact that it is the United States Marshal's duty to serve the defendants, since plaintiffs are proceeding in forma pauperis. See Graham v. Satkoski, 51 F.3d 710, 713 (7th Cir. 1995); Sellers v. United States, 902 F.2d 598 (7th Cir. 1990). Instead, I will dismiss defendant Smith because the record in this case reveals that the only action he took with respect to this claim was to recommend dismissal of Ghashiyah's offender complaint about the conduct report, and therefore he does not have the requisite personal involvement in this claim. See Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1996); Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

Ghashiyah does not dispute that the individual defendants did not destroy his legal property, and he has submitted no admissible evidence to link defendants to the confiscation of his legal property. Although he claims that a property department employee told him that

6

defendants were holding his property, his assertion that the employee made these statements is inadmissible hearsay and cannot be used to oppose or support a summary judgment motion. Ghashiyah's contention that defendants perjured themselves with regard to working in the property department and control of property department operations is supported only by hearsay assertions and similarly cannot be used to oppose or support a summary judgment motion.

Furthermore, Ghashiyah has submitted no competent admissible evidence to prove that Grahl knew that the allegations in Ghashiyah's conduct report were false. Ghashiyah claims that an officer Dalke told Grahl that the charges were false, and that Dalke told Ghashiyah that Grahl and defendant Garro were behind the false report. Ghashiyah also suggests that Captain Oestrich, who conducted the due process hearing on the conduct report, knew that the report was filed falsely. However, both of these contentions again rely on inadmissible hearsay. Furthermore, Ghashiyah has presented no evidence supporting his contention that Grahl's denial of Ghashiyah's claim constitutes perjury.

Accordingly, Ghashiyah's access to court claim must be dismissed.

## IV.  ADA CLAIM

### A.  Relevant Facts

Plaintiffs all contend that defendant WPC and the Program Review Committee utilize a custom and practice that categorically excluded parole to incarcerated persons with a history of drug or alcohol diseases and other disabilities in a discriminatory manner. They further assert that WPC has structured entry into alcohol and drug treatment programs so that most incarcerated persons have to wait until they are within thirty-six months of their

7

mandatory release date, and incarcerated persons who see the parole board prior to criteria time-frame are automatically denied parole. They claim that when Ghashiyah raised this issue before the parole commission, the commission terminated the interview.

**B.     Discussion**

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It prohibits discrimination against the disabled in the areas of employment (Title I); public services, programs, and activities (Title II); and public accommodations (Title III). Tennessee v. Lane, 541 U.S. 509 (2004). This case involves Title II, which provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination.[5]

42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131 (1)(B). State prisons fall within this definition. Penn. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998). Prior drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA. 28 C.F.R. § 35.104 (2000).

In Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002), the Ninth Circuit addressed a similar argument and distinguished between a parole board that categorically denies parole

---

[5] Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against the states for conduct that actually violates the Fourteenth Amendment. United States v. Georgia, 126 S. Ct. 877, 882 (2006). Although Claim 27 is an ADA claim only, i.e., it does not include a Fourteenth Amendment claim, I cannot say absolutely that the plaintiffs' characterization of the discrimination they suffered would not also violate the Fourteenth Amendment. Thus, I will not dismiss defendant WPC based on sovereign immunity.

8

to inmates with a history of alcoholism or drug addiction and a parole board that takes history of addiction into account in determining an individual inmate's appropriateness for parole. It found that "plaintiffs may state a claim under Title II [of the ADA] based on their allegations that the parole board failed to perform an individualized assessment of the threat they pose to the community by categorically excluding from consideration for parole all people with substance abuse histories." Id. at 898 n.4. However, it found that a parole board may take into account an inmate's disability in making an "individualized assessment of the future dangerousness of an inmate." Id.

WPC has discretionary parole-granting authority under Wis. Stat. §§ 15.145(1) and 304.06(1)(b), and it has promulgated administrative rules to carry out its statutory duties. Wis. Admin. Code § PAC 1.06(7) provides that:

> (7) A recommendation for parole and a grant of parole shall be made only after the inmate has:
>
> (a) Become parole-eligible under s. 304.06, Stats., and s. PAC 1.05;
>
> (b) Served sufficient time so that release would not depreciate the seriousness of the offense.
>
> (c) Demonstrated satisfactory adjustment to the institution and program participation at the institution;
>
> (d) Developed an adequate parole plan; and
>
> (e) Reached a point at which, in the judgment of the commission, discretionary parole would not pose an unreasonable risk to the public.

While a recommendation for and grant of parole may be made only after an inmate has satisfied all of the § PAC 1.06(7) criteria, parole is discretionary. Thus, the WPC is not required to grant parole even where all these criteria have been satisfied.

9

Defendants acknowledge that the WPC takes into account a prior history of drug and/or alcohol addiction and failure of an inmate to complete alcohol and other drug abuse treatment in the process of parole consideration. They state that this is relevant to a § PAC 1.06(7) determination of whether an inmate has demonstrated satisfactory program participation and whether the inmate's parole release would pose an unreasonable risk to the public.

Plaintiffs' averment that defendants have a custom and practice of categorically excluding parole to incarcerated persons with a history of drug or alcohol addictions in a discriminatory manner is not supported by the record. Plaintiffs have presented no admissible and non-conclusory evidence showing that the WPC has any legal responsibility or authority to provide drug and alcohol treatment to inmates or has any control over which inmates are permitted to enter treatment at any given time. Further, plaintiffs have presented no admissible evidence to support their contention that inmates with identified histories of substance abuse are automatically denied parole grants.

In addition, plaintiffs have submitted no non-conclusory evidence to prove that any one of them was a person with a disability who was otherwise qualified for parole release, and who was denied parole release solely due to an alleged disability. The only evidence presented regarding plaintiffs' parole status is the plaintiffs' Parole Commission Forms. Plaintiff Childs obtained a discretionary parole grant on October 13, 2004. On each of the occasions when Childs was found to be not appropriate for a parole grant, his forms showed that it was because he needed to complete AODA (Alcohol and Other Drug Abuse) programming, he had not served sufficient time for punishment, and his release would involve an unreasonable risk to the public. The forms of plaintiffs Smith and Krysheski do

not indicate that a history of drug or alcohol abuse played any part in any denial of discretionary parole grants for them, but rather cite the need for sufficient punishment and concern about risk to the community. Krysheski's most recent form notes that Krysheski was frustrated about the opportunity for programming, but states that he has served only a small portion of his sentence. (Ex. 22 to 2005 Krysheski Aff.)

As to Ghashiyah, the parole commission considered him for parole in 2005, 2001, 1998, and 1997. Other Parole Commission Action forms filed on him reflect deferrals for administrative reasons. The forms filed for each of the considerations report that Ghashiyah had not served sufficient time, parole release was considered to involve an unreasonable risk to the public, and program participation was unsatisfactory. The 2001 form noted that Ghashiyah was "very oppositional and argumentative in regards to every aspect of [his] incarceration," and that the underlying crime called for more punishment. (Ex. 10 to July 16, 2004 Ghashiyah Aff.) The 2005 form noted that Ghashiyah was unwilling to follow rules, had difficulty managing his anger, and refused AODA and educational training. (Ex. 46 to Jan. 5, 2005 Ghashiyah Aff.)

Based on the foregoing, plaintiffs' Claim 27 will be dismissed.

## V. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiffs' cross motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 19 day of September, 2006.

/s_____
LYNN ADELMAN
District Judge